I will now call the next case, and it's Belcher Pharmaceuticals v. Hospira. Okay, Your Honor, sorry about that. My video was blocked for a second. Can you see me now? We can see you. Wonderful. I can hear you. Great. My colleagues can hear me. All right. Well, then I will proceed with the court's permission. Good morning. My name is Lloyd Smith. I am counsel for the appellant, Belcher Pharmaceuticals. This is a single-issue appeal. We're here because the district court made a mistake in drawing a bright-line rule against Belcher's claims based on Mylan Laboratories. I think it's important to understand this, to focus on the brief, short reasoning the district court gave for its ruling. The district court emphasized that the Lanham Act claim based on standard package inserts often used for FDA-approved drugs fails because it usurps the FDA's authority. There are several problems with this reasoning. First, Mylan itself doesn't prohibit Belcher's claims. Second, there is no standard packaging at issue in this case. Hospir's packaging that's at issue, the package inserts, is far from standard. And third, Palm Wonderful and the cases that follow teach away from the district court's result. Now, let me take you to why Mylan itself doesn't prohibit Belcher's claims. Can I ask you a question before you get into that? It was interesting in both a briefing and a district court opinion for me to see what appeared to be strong reliance on Mylan Labs as binding. And maybe it's right, maybe it's wrong, but though I think the Fourth Circuit is great, it's not our circuit. I wonder if you have any arguments about what this circuit's rule should be. I do agree that Mylan isn't binding. I can address that in several ways. First, I don't think the facts of Mylan or the holding of Mylan actually goes against us when you consider the facts of this case. I'll get to that in a second. But obviously, as you said, it's another circuit. It's not binding. I would hold that maybe the most binding or analogous case the 11th Circuit has is the Hitech case that was cited by the other side, which actually allows a label claim based on I believe it's the amount of protein claimed in the label and rules that it is not precluded. The plaintiff was not precluded for bringing such a claim because there were clear FDA regulations from which they could determine whether or not those claims followed the regulations and were false or misleading. So I would point you to Hitech, the end of Hitech, and the reasoning there with respect to no preclusion of the label claim there. Let me ask you to address this. So I tend to agree that we are not in Virginia, and so we're not bound by the Fourth Circuit. I think I can take judicial notice of that. Let's assume we adopted this rule that a plaintiff cannot bring a Lanham Act claim merely by pointing to the fact that an unapproved drug has been put on the market, but that a plaintiff can bring a Lanham Act claim if the defendant has misled consumers about the drug being approved. Okay? So that's the line that we adopt. If we were to adopt that line, would you have evidence in the record that would let you survive summary judgment? Yes, Your Honor. I mean, I would say that this case is fairly unique. We actually have indications that are even more than unapproved. The FDA has explicitly told the defendant that the indications are not approved. Yeah, but where is the defendant, where is it in the record, and this is a legitimate question, I'm not trying to argue with you, but I mean, where is it in the record that the defendant made some affirmative misrepresentation that the product was approved? Well, I would go back to Mylon talking about standard package labeling, right? I mean, in other words, drugs are different. This is a highly regulated industry, and we have evidence and surveys that people expect the indications, consumers expect the indications to be approved. And so I would say by putting those indications on the labels, they are representing that they are FDA approved. Can you be specific about what indications you're talking about and where they are in the label and where those indications are exposed in the record? Sure, in the record, and now I don't know if you're asking me for volume and number sites and I can possibly give those to you on rebuttal, but what I'm saying is there's the record showing that they have cardiac arrest and prolonging anesthesia indications and usage. In other words, in the indications and usage portions of their package inserts where they list those indications, which we also have shown evidence in the record, for instance, starting in 2012 where the FDA told them that they were not going to approve these indications and Hospital left those indications in their labels and left their drug on the market with those indications on there. Does that answer your question? It does. Thank you. But those indications themselves are misleading. Is that right? Yes, Your Honor, I am saying those indications themselves are misleading. And I think there's other evidence to prove that they're misleading. But I think Mylan's statement about standard package inserts often used for FDA-approved drugs is instructive enough. When you look at the test the district court was using about is it misleading, and then HITECH mentions misleading in context, Mylan mentions misleading in context, I mean, what is more inherent to what the drug is used for than the indications and usage? And since the drugs are understood to be FDA-approved, certainly I believe that indications showing or there's evidence in the record showing that these indications would be perceived as FDA-approved when they were explicitly not approved. Do the packages say that either the indications or the drugs are FDA-approved? There is no explicit statement that they say that they're FDA-approved. What I'm talking about is the imprimatur of FDA approval that, for instance, is mentioned by the district court in the Parler sterile case. When you put a package insert with a drug into Commerce that has all the imprimatur of an FDA-approved drug, then a strong portion of those who read and review that package insert and buy that drug will perceive it to be FDA-approved. That is... Go ahead, I'm sorry, Your Honor. I'll let Judge Brasher speak for himself if he sees it differently, but it sounds like that argument might fall on the other side of the line that he proposed as a potential holding for this court, which is putting a drug on the market itself isn't enough. You need to identify misleading statements within the packaging in order to raise a late-of-match claim. How is your claim different than that? If we accepted the Mylan rule, where does your claim differ from that rule? Well, look, the Mylan rule is, as you know, the Mylan itself is not about what's actually in the packaging. It's about the overall approval process, which the plaintiff claimed was improper, had been fraudulent. Our case is very different. We're saying the actual statements in the indications and usage, which Mylan would refer to as standard package labeling of the type that's often used for FDA-approved drugs. So there's sort of this base assumption that when you look at an indication and usage, it's been approved by the FDA. We're saying there are specific statements in there that the FDA has explicitly told the defendants are not accurate and should not be in their labels. But we also have outside evidence of this perception as well in the record. We added to the complaint Mylan's own white guides, I'm sorry, Hospira's own white guides saying that you should never put unapproved indications in the package inserts because it's misbranded pursuant to the FDA regulations. We have an expert. We have consumer surveys. We have internal Mylan concerns about using unapproved indications. And we also have customer emails. So there's a lot of evidence in the record in this case that those indications were perceived as FDA-approved and were misleading. All right, if there's no questions, I'm just going to move on and hit a few points that I think are important. I think it's important in, we've talked about Mylan and I've distinguished Mylan and explained why Mylan leaves the door open. Specifically, it talks about to state a claim under the Lanham Act, Mylan was required to point to some claim or representation that is reasonably clear from the face of defendants advertising or package inserts. And we've done that. We've pointed to explicit statements in the package inserts themselves, indications, and then also we pointed out the shelf life. But I think it's also important to remember the purpose of Palm Wonderful and the role that Palm Wonderful plays in this area of law. Palm Wonderful has emphasized the importance of allowing competitors to police the market in addition to the FDA and the coextensive or complementary function of the Lanham Act along with the Food, Drug, and Cosmetic Act. And the district courts have certainly followed along on this. And I see my time is almost out, but there's plenty of district court rulings pointing to the importance of allowing private enforcement actions in context where the label might be misleading in context. And with that, my time is up and I'll save the rest for rebuttal. All right. Thank you. Good morning, and may it please the court, Katherine Meeks for Apelli Haspira. Haspira sold two epinephrine products with labels and package inserts that accurately reflected the way hospitals and doctors have used this drug for nearly a century. Felcher does not claim that the labels were literally false. Instead, its Lanham Act claim asserts that Haspira's labels somehow implied that the drug had gone through the FDA's formal new drug application process. For two reasons, the court should reject Felcher's Lanham Act claim and affirm the grant of summary judgment for Haspira. First, the Lanham Act requires proof that customers who looked at the label were actually deceived by it. But as the district court held, Felcher never produced any evidence that customers who saw the label were actually misled by it. Felcher has failed to challenge that ruling on appeal, and that independently justifies affirmance. Second, all Felcher argues in this appeal is that the district court erroneously adopted a bright-line rule prohibiting Lanham Act claims based on a supposedly misleading drug label, but the district court didn't adopt that. It correctly held that the mere act of placing a drug on the market with a label and an expiration date did not, without more, imply that the drug had entered the market through the new drug application process. That holding was correct and should be affirmed. I'll start with Felcher's failure to meet its burden of proof. Because this claim is not a claim of literal falsity, but a claim only that the label was misleading, Felcher bears the burden of proving actual consumer confusion. This is what the court held in the Hickson case, in the Osmos v. Viance case, and in the Johnson & Johnson v. 1-800 contacts case, that there is simply no evidence in the record that anybody who saw the label was misled by it. Typically, a plaintiff will prove deception with consumer surveys or expert testimony. But here, Felcher's consumer survey expert didn't show the label to the survey respondent. He simply asked hypothetical questions about whether the respondents would prefer to buy epinephrine with a certain characteristic, such as a longer shelf life. Similarly, Felcher did not show its other expert, Mr. Brenia, he did not actually look at Hasbira's labels in preparing his expert report. He also testified that these labels play no role in his purchasing decision. Mr. Brenia testified that he purchases epinephrine through the website of a third-party distributor. There are two important facts about what appears on the website of the distributor. First, it shows whether the drug appears in the FDA's orange book. That orange book shows drugs that have gone through the new drug application process were equivalent generics, so he would have been on notice whether the drug appears in the orange book or not. Second, the website does not include the labels or package. So, Felcher's own expert testified that he does not even see this material until he has already made a purchasing decision. I'd like to know... I hate to interrupt you, but I've got a question about less about the facts and more about the rule you'd like for us to put in place. The argument that this claim can't survive because the Lanham Act is preempted by the FDCPA, or is it that simply that Felcher hasn't put in the record statements that actually misled customers? It's both, Your Honor. So, the district court held that even assuming that there's some evidence that there was some consumer confusion, Felcher had failed to tie that confusion to the only advertisement that's still an issue in this appeal, and that is the label and the package inserts. And since that's not challenged, that's a sufficient basis to decide this appeal. But we also argue in the alternative that the FDCPA precludes the claim, and that's for two reasons. The Supreme Court in Palm Wonderful said that a Lanham Act claim is precluded to the extent it interferes with a policy judgment of the FDA. And in this case, the FDA declared a drug shortage for both the epinephrine ampoule and the syringe, and it made a specific decision that Hospira should continue selling its epinephrine products even once Felcher's ampoule was approved because Felcher could not supply the market on its own, and epinephrine is a life-saving, medically necessary drug. Additionally, there's a conflict between the text of the Food, Drug, and Cosmetic Act and the Lanham Act. So in this case, Hospira sold its epinephrine as a grandfather drug. The Food, Drug, and Cosmetic Act requires that the label of a grandfather drug contains the same indications for use that the drug contained before the FDCA was passed in 1938. That's section 201P of the FDCA. So in this case, there's no dispute that Hospira's labels contain historic indications for use. Both of Felcher's experts admitted that, but Felcher claims that those historic indications are misleading because they somehow imply that the drug went through the new drug application process. So its argument creates a lose-lose situation for a manufacturer like Hospira. It needs to comply with the grandfathering provisions, and if it deviates from that label, it would lose its grandfathering status. And yet, if it keeps that label, Felcher would argue that it would be liable under the Lanham Act. That's a direct conflict between the two statutes that requires preclusion in this case. So that grandfathering provision, you mentioned the label, and I'm not a food and drug lawyer, so you mentioned the label. Does that incorporate the idea of these package inserts or whatever that would also have indications on them? Or is there a variance between those two things? No, that's correct. The package inserts are subsumed within the FDA's definition of a label. So we understand that Felcher is challenging two aspects of the label, the expiration date and the indications for use. And those indications are dictated by the grandfathering provisions of the FDCA. So Felcher argues in its reply brief that Hospira simply made up what's supposed to be on the label, but that's not true. The label is designed to conform to the grandfathering provision of the Food, Drug, and Cosmetic Act. Can I just follow up? Go ahead, Andrew. I was just going to ask, is there an expert that explains this in the record? Yes. Ms. O'Shea, who is Hospira's expert at Volume 3 of the Unredacted Appendix, her report explains in detail the statutory scheme and also the grandfathering provisions of the Act. Thank you. Ms. Meeks, I want to get you to, you know, I always worry about what is this opinion going to say and how do we write it? And, you know, what you're talking about, the interaction of the Lanham Act and the Food, Drug, and Cosmetic Act. I mean, in my mind, you know, Felcher's not asking us to get involved in deciding, you know, whether their product is safe. They're just asking us to decide the fact of, you know, whether it was, there was a false claim of FDA approval or a false representation of FDA approval or not. I mean, surely the Lanham Act and the Food, Drug, and Cosmetic Act can both exist and be the basis for sorting these kind of claims out, right? Sure. And in another case, it's certainly possible that a false assertion of FDA approval, and again, we vigorously dispute that it's false. But in another case where, for example, a drug was required to get a new drug application and the drug was misleadingly sold as an FDA-approved drug, perhaps there's a claim. This case is different because the FDA made a specific policy judgment that the drug should remain on the market to resolve a drug shortage. And the FDCA... So to the extent that someone reads the district court order to say that, you know, you can't bring a claim under the Lanham Act in this area because it would, quote, usurp the FDA's authority to enforce the Food, Drug, and Cosmetic Act, you don't think that's what the district court order means. It's not a broad statement that the two... You can't bring a Lanham Act claim in this area of commerce. I don't think so, Your Honor. And in fact, at the motion to dismiss stage, this is docket 34, the district court said that it could entertain a claim that a drug's label misleadingly showed FDA approval. So its holding was much more narrow. It's cited Mylan Labs for the point that the mere fact that a drug is sold and that it has a label on it doesn't imply all kinds of background facts about how the drug entered the market. And that holding makes sense in this case because there's at least two lawful ways that the drug can enter the market. The first is through the new drug application process, and the second is under the grandfathering provisions of the Food, Drug, and Cosmetic Act. So the mere fact that the drug is in commerce and has a label doesn't imply anything one way or the other about how the drug got to market. You talked about how the government's encouraging of Hespira marketing this drug is important. It seems to me that perhaps the better part of your argument is the grandfather clause. If this drug had to have that particular label on it, then your argument would be that you can't put drug companies in a catch-22 if they market the drug with the label, then they're subject to a Lanham Act claim. And if they change the label, then it's no longer approved under the FDCA. Is that your best argument, or are you asking us to rely instead on these more individualized policy choices about trying to get the drug to market at all from the FDA? It's both, Your Honor. We think there's a strong textual argument based on the clash between these statutes. But additionally, the fact that the FDA in this case specifically asked Hespira to keep the drug on the market is yet another reason the claim in this case is meritless. Belcher has not identified a single case where the FDA asked for a manufacturer to keep the drug on the market and that the manufacturer was later subject to Lanham Act liability. I'll note in this case that Belcher is seeking $100 million in damages for Hespira's doing exactly what the FDA asked it to do. Additionally, the FDCA itself contains a misbranding provision that prohibits the sale of a drug with a false or misleading label. Simply inconceivable in this case that if the FDA thought that the drug was misbranded, it would have asked Hespira to continue selling the drug. Does a wonderful leave room for both of these statutes have an impact? That opinion spends a lot of time discussing the different aims of the FDCA versus the Lanham Act. Sure. In an ordinary case, it's certainly possible that these Lanham Act claim could be brought based on a drug label, though Palm Wonderful itself on nearly every page of the opinion emphasized it was a case about food and beverage labeling and the drug context could be different. Not only because many drug labels are pre-approved, but also because the FDA much more heavily regulates drug labeling than it does food and beverage labeling. But on page 120 of the Palm Wonderful opinion, the Supreme Court specifically distinguished the case for a very general statute like the Lanham Act would interfere with the more specific provisions of the FDCA and the FDA's authority to regulate in the interest of the public health. Let's say the label had said without approval from the FDA, this drug will make you, put you back in the shape that you were in when you were 18. And also, by the way, it's helpful for these other purposes. At that point, even under your theory, someone could bring a Lanham Act claim, right? Yes, I believe so, Your Honor. Try to understand the lines of this. I'd like to briefly address in my remaining time Belcher's argument that the FDA rejected the indications on the label. That's simply incorrect. As part of the ongoing dialogue between Hospira and the FDA over the new drug applications for the ampule and the syringe, the FDA indicated that Hospira needed additional studies to support indication, the indications on the label, except the grandfathering provision is a totally separate method by which the drug can be distributed. And Hospira was at all times transparent with the FDA that it would continue selling its grandfather product as is while that NDA process played out. And the FDA did eventually grant tentative approval for both the ampule and the syringe. I see my time is up. So if the court has no further questions, I thank you for your time. Thank you. Thank you, Your Honor. Let me address, there's obviously several issues that were raised there and let me address them quickly and hopefully as comprehensively as I can. The grandfathering issue is a distraction. Hospira didn't argue below that a drug was grandfathered. It's never established that it's legally grandfathered. Its expert admitted they've changed the label several times. And the drug was kicked off the market in 2017. A grandfathered drug would have had the right to remain on the market. So the idea that they had grandfathered status and that somehow gets them out of a Lanhamac just isn't accurate. And for this court to decide on that basis, I think you'd have to remand to the district court about whether or not there has been a determination on whether they were grandfathered or not and allow the parties to set forth the arguments and make that determination. Have you all made an argument that they were not required to include the particular indications based on the grandfathering rule? I don't think that issue has ever been joined. I mean, certainly we would say they're not required to put them in there. We have an approved label for the very same drug, the Ampule, and we have different indications that were the ones that the FDA approved. So what would give them the right to put separate indications that they, I guess, feel like historically have been on their label, even though their expert has testified they changed the labels over time? There's nothing requiring them to keep it that way. And there's nothing in the record proving that they were required to keep it that way. And as far as them saying they just followed what the FDA told them to do, well, the FDA told them their indications were inaccurate and so far unsupportable. They told them to get approval for their drug, right? And they knew this in 2012. And the shortage for the Ampules, they weren't instructed to be on the market in 2015. So I guess it's up to the FDA to explain why or what they expected them to have on their labels in 2015. But they certainly never gave them permission, any affirmative permission, or approved any of their labels to keep unapproved indications on those labels due to a drug shortage. I don't think that's accurate to say that. I would point out the reasoning of Palm Wonderful, where the government at the end of the case tried to argue that somehow agency determination on enforcement measures or regulatory measures might create a ceiling on enforcement. And the Supreme Court explicitly rejected that and said that no, the Lanham Act, unless the agency has explicitly spoken on a topic and explicitly stated that they meant to displace the Lanham Act remedy, that the Lanham Act remedy still stands. And I think so the grandfathering argument or all of the statements about the labeling coming from Hospira would be trumped by that reasoning in Palm Wonderful. I think it's important, unless your honors have questions, to address briefly the factual arguments that were made at the beginning of opposing counsel's arguments. I think opposing counsel was trying to point to proof problems that Belcher has with its case, even on remand. But I would say that's not accurate. We narrowly appealed a single issue. It's about the indications. It's about what's on the label. It's about the shelf life. And the district court didn't make any findings past the first element of the Lanham Act, whether there was a false or misleading advertisement. Right. And that was it. So the rest of the findings in the record went on to address some of the other accusations that were in the record that the district court dismissed. But we're here on appeal just about these indications and about the shelf life and about the district court's denial of those statements as the basis of a Lanham Act claim only with respect to the first element of the claim itself. In fact, the district court actually acknowledged that Belcher did produce evidence that some in our briefing demonstrates that some customers actually perceived it that way. And if you look at what the district court cited as a potential laundry list of types of evidence that would present evidence of deception, it talked about consumer surveys, market research, expert testimony, or other evidence. And as I've said before, all of that evidence is in the record. I know that Aspera takes issue with our survey and they filed a Daubert motion to get it out, but there's been no ruling on that Daubert motion. And as the record stands, that survey is good. I see that my time is up. So unless there are any other questions, I will defer to the court and rest on my briefs and ask the court to please overturn the district court's ruling and remand to the district court for further findings at trial about the claims at issue. Thank you. Thank you.